# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG ABEL,<br><br>                Petitioner,<br>  vs.<br><br>W.J. SULLIVAN *et al*.,<br><br>                Respondents. | CASE NO. 06CV0406 WQH (WMc)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Craig Abel (hereafter Petitioner), a California State inmate proceeding *pro se*, was convicted on five counts of lewd and lascivious conduct with a minor by a San Diego County jury. (Lodgement 1 at 143-47.) Petitioner appealed his conviction to the California Court of Appeal, Fourth Appellate District, Division One, which affirmed the judgment of the Superior Court. (Lodgement 10.) Petitioner sought review of California Court of Appeal's opinion. (Lodgement 11.) The California Supreme Court denied the petition for review. (Lodgement 12.)

Pursuant to 28 U.S.C.§ 2254, Petitioner filed a Writ of Habeas Corpus (hereafter "Petition") raising four claims: (1) that Petitioner was denied effective assistance of counsel in violation of his sixth and fourteenth amendment rights, (2) the trial court denied Petitioner due process when it admitted evidence of prior sexual misconduct, (3) the trial court convicted Petitioner based on insufficient evidence, and (4) Petitioner's 310 year sentence amounts to cruel and unusual punishment. (Petition at 7,19,36,45.)

This Report and Recommendation is submitted to United States District Judge William Hayes pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule H.C.2 of the United States District

Court for the Southern District of California. After reviewing the Petition, Respondents' Answer (hereafter "Answer"), and all supporting documents by the parties, it is **RECOMMENDED** that the Court **DENY** the Petition with prejudice.

## II. STATEMENT OF FACTS

The relevant facts are based upon the California Court of Appeal's unpublished opinion affirming Petitioner's conviction. In accordance with *Harman v. Summer,* 120 F.3rd 157, 161 (9th Cir.1997), federal courts must give deference to the factual findings of state courts, which are presumed correct for the purpose of habeas corpus review. Pursuant to 28 U.S.C. § 2254(e)(1), Petitioner has "the burden rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Summer v. Mata,* 439 U.S. 539, 545-547 (1981). Based upon the aforementioned, the facts are as follows:

The offenses occurred sometime between May 1997 and January 1998, when Petitioner, the children's mother, the victims (hereafter "Girl" and "Boy"), and their baby brother lived in a two-bedroom apartment on Imperial Avenue. Girl was 10 years old and Boy was 8 years old. Petitioner slept with the children's mother and their baby brother in one of the bedrooms. Girl and Boy shared the other bedroom, with Girl on a rollaway bed and Boy on the floor. The molestations occurred at night while the children were in bed. On the first occasion, Petitioner entered the bedroom, lifted up Girl's nightgown, and rubbed her buttocks with his hands. On another occasion, Petitioner put his hands over her mouth and told her not to speak while he lifted her nightgown. Petitioner proceeded to pull down Girl's underwear and penetrate her vagina with his penis. Girl could not escape because Petitioner forcefully restrained her. After Petitioner finished, he left the room, telling her not to speak of the incident. Girl was afraid; she cried and went to the bathroom. Her vagina hurt and she had blood on her underwear. In the morning, Girl told Boy what had happened. On still another occasion, Petitioner rubbed Girl's breasts over her nightgown. He also rubbed his penis on her buttocks. When he engaged in the conduct, Girl felt too weak and scared to resist.

One night, Girl switched sleeping arrangements with her brother to deter the Petitioner.

Girl testified that Petitioner entered the room and rubbed Boy's buttocks with his hands as he slept on the rollaway bed and Girl slept on the floor. Boy testified that on the night he and his sister switched places, Petitioner moved his penis back and forth across Boy's buttocks over his pajamas. Before this incident, Boy saw Petitioner put his penis on his sister's buttocks.

Girl testified that Petitioner only "forced [himself]" on her once, but continued to touch her sexually while they were living on Imperial Avenue. When they moved to a different apartment on Logan Avenue, the molestations stopped. Boy's grandmother, aunt, and uncle also lived with them at the Logan Avenue apartment.

(Lodgement 10 at 2-4.)

### III. STATE PROCEEDINGS

On March 7, 2002, Petitioner was charged with five counts of lewd and lascivious conduct with a minor in violation of California Penal Code section 288(a). (Lodgement 1 at 1-5.) On August 2, 2002, a San Diego Superior Court jury found Petitioner guilty on all five charges. (Lodgement 6 at 426-29.) The trial court sentenced Petitioner to 310 years to life. (Lodgement 6 at 447-48.) Petitioner is a habitual sex offender within the meaning of California Penal code section 667.71(a). Petitioner had three prior "strikes" within the meaning of California Penal Code sections 667.6(b)-(I) and 1192.7(c), based on his prior convictions for rape, rape with a foreign object, and robbery (Cal. Pen. Code §§ 667.1(a)(c)(d), 668, 1192.7(c)). (Lodgement 6 at 439.)

On October 15, 2002, Petitioner filed a timely notice of appeal. (Lodgement 1 at 184.) Petitioner's arguments on appeal were: (1) the trial court erred in admitting evidence of other acts pursuant to California Evidence Code § 1108; (2) the evidence in support of the judgment was insufficient ; and (3) his sentence of 310 years was cruel and unusual punishment. (Lodgement 7,9.) On December 17, 2004, the Court issued a decision affirming the judgment on appeal in its entirety. (Lodgement 10.) On January 21, 2004, Petitioner filed a petition for review in the California Supreme Court raising his three claims on appeal. (Lodgement 11.) On February 24, 2004, the Court denied the petition for review. (Lodgement 12.)

On April 20, 2004, Petitioner filed a petition for writ of habeas corpus in the San Diego County Superior Court, alleging ineffective assistance of counsel. (Lodgement 14.) On June 11, 2004, the Superior Court denied the petition for writ of habeas corpus on it merits. (Lodgement 15.) On August 2, 2004, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, alleging the same claim. (Lodgement 16.) On November 19, 2004, the Court of Appeal denied the petition of writ of habeas corpus on its merits. (Lodgement 19.) On November 29, 2004, Petitioner filed a petition for review in the California Supreme Court, regarding the denial of his ineffective assistance of counsel claim. (Lodgement 20.) On February 16, 2005, the California Supreme Court denied the petition for review. (Lodgement 21.)

## IV. DISCUSSION

**A. Scope of Review**

Title 28, United States Code, § 2254(a), sets forth the scope of review for federal habeas corpus claims: The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*.

28 U.S.C.A. § 2254(a) (West 1994) (emphasis added).

This petition is governed by the provisions of the Anti-terrorism Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. *Lindh v. Murphy,* 521 U.S. 320 (1997). Under 28 U.S.C. § 2254(d), as amended by AEDPA:

(d) An application for a writ of habeas corpus of behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. 2005).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in the [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v Taylor*, 529 U.S. 362, 405-406 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of a particular state prisoner's case." *Id.* at 407. Alternatively, an unreasonable application may be found, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*

"[A] federal habeas court may not issue the [habeas] writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.... Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). (internal quotation marks and citations omitted). Clearly establish federal law "refers to the holdings, as opposed to the dicta of [the Supreme] Court's decisions." *Williams*, 529 U.S. at 412.

Finally, habeas relief is also available if the state court's adjudication of a claim, "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C.A. § 2254(d)(2) (West Supp. 2005). In order to satisfy this provision, Petitioner must demonstrate that the factual finding upon which the state court's adjudication of his claim rests, assuming it rests on a factual determination, is unreasonable. *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state-court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-806 (1991); *Van Lynn v. Farmon*, 347 F.3d 735 (9th Cir. 2003). The California Court of Appeal denied Petitioner's claims on the merits in two unpublished opinions. (Lodgement 10, 19.) The

California Supreme Court declined review.  (Lodgement 12,21.)  Therefore, the Court will review whether the California Court of Appeal's decision to deny petitioner's writ of habeas corpus was objectively unreasonable.

**B. Federal Proceedings**

On February 16[1], 2006, Petitioner filed a petition for writ of habeas corpus in this Court alleging he is entitled to habeas relief because: (1) he was denied effective assistance of counsel when the defense failed to impeach the victims' aunt with the statement she had made to a private investigator, Mr. Blake, regarding the victims' false allegation of sexual abuse concerning her male houseguest; (2) the trial court improperly admitted other acts evidence pursuant to California Evidence Code § 1108, which unconstitutionally permitted the jury to consider evidence of his propensity to commit crimes; (3) his conviction is not supported by sufficient evidence; and (4) his 310-year sentence constitutes cruel and unusual punishment.  (Petition at 7-50.)

On June 2, 2006, Respondents answered, asserting that Petitioner's claim should be denied because: (1) the decision of the California Court of Appeal denying Petitioner's petition for writ of habeas corpus alleging ineffective assistance of counsel, and the decision of the California Court of Appeal denying Petitioner's claims of violation of due process, insufficient evidence , and cruel and unusual punishment raised on direct appeal are consistent with, and not an unreasonable application of, federal law; (2) The California Court of Appeal's decision was based upon reasonable factual determinations in light of the evidence presented in the state proceedings.

**C. Petitioner Is Not Entitled To Habeas Relief On The Basis Of Claim One**

Petitioner contends that he was denied his  constitutional right to effective counsel under the 6th and 14th Amendment.  (Pet. at 7.)  Specifically, Petitioner claims his counsel was ineffective for failing to impeach the victims' aunt.  (Pet. at 14.)  Petitioner argues that he was

---

[1] Petitioner bears the burden of proving that his pending petition is timely filed.  *Smith v. Duncan*, 297 F.3d 809 (9th Cir. 2002).  Under the prison "mailbox rule" a *pro se* application for relief is deemed constructively filed the moment it is delivered to prison officials to be forwarded to the county clerk.  *Patterson v. Stewart*, 251 F.3d 1243, 1245, n.2 (9th Cir. 2001).  The application is presumed to have been delivered to prison officials on the date it is signed absent evidence to the contrary.  *Smith,* 297 F.3d 809; *Lewis v. Mitchell*, 173 F. Supp. 2d 1057, 1059, n.1 (Cal. C.D. 2001).

prejudiced by counsel's failure to impeach because: "(1) it came from a person who otherwise would have been biased in favor of the children," therefore enhancing the effect of impeachment; "(2) it related directly to the charges on trial, i.e., false allegations of sexual abuse, as opposed to generalized accusations of untruthfulness; and (3) it came from a credible and powerful witness...." (Pet. at 7.)

Respondents argue that counsel's decision not to impeach the victims' aunt was tactical. (Answer at 19.) Also, Respondents contend that ample evidence was presented at trial to convict Petitioner and impeachment of the victims' aunt would not have made a different outcome "reasonably probable." (Ans. at 20.)

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (stating it is beyond question that *Strickland* is the "clearly established" law governing ineffective assistance of counsel claims); *Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (same); *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997) (same). The benchmark of an ineffective assistance of counsel claim is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To prove this claim, defendant must show that counsel's performance was deficient. *Id*. This requires the defendant to show that counsel's "representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the defendant must prove that counsel's failure so prejudiced the defendant as to deprive her of a fair trial. *Id.* at 686. The defendant must show that there is a "reasonable probability" that, but for counsel's questionable conduct, the result of the trial would be different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment. *United States v. Ferreira-Alameda,* 815 F.2d 1251, 1253 (9th Cir. 1987); *Strickland,* 466 U.S. at 690; *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985).

These standards are not mechanical rules. *Strickland,* 466 U.S. at 697. A court need not address the first factor before addressing the second. *Id*. If a court can dismiss the claim on grounds of insufficient prejudice, it should do so. *Id*. "The ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id*. Furthermore, in an ineffectiveness claim, the same principles govern a federal collateral proceeding as on direct appeal. *Id.* at 670. "And in a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d), but is a mixed question of law and fact." *Id*.

Petitioner contends that his counsel should have impeached the victims' aunt when she testified that she did not know of a previous false abuse accusation by the victims. (Pet. at 14.) Petitioner's defense relied on painting the victims as liars. Petitioner's counsel asked the victims' aunt about the incident. (Lodgement 15 at 4.) The aunt denied knowing about any such incident. (Id.) Petitioner claims that counsel could have no strategic reason for failing to impeach the aunt with statements she had made to his private investigator describing a false accusation of abuse. (Pet. at 16.) Petitioner further argues that he was prejudice by the failure to impeach because the credibility issue between the victims and Petitioner was central to the trial. (Pet. at 18-19.)

Respondents argue that the counsel's decision not to impeach was tactical. (Ans. at 18.) Respondents state that counsel found the aunt "a credible witness and was concerned about how the jury would perceive the defense if he attempted to discredit her further." (Id.) Also, Respondents argue that counsel's failure to impeach did not prejudice Petitioner. (Ans. at 19.) They contend that the other evidence presented at trial was sufficient to warrant conviction. (Ans. at 20.)

In preparation for trial, Petitioner's counsel hired an investigator (Pet., Ex. A [Blake Decl.] at ¶ 2.) The investigator spoke with the victims' aunt. (Blake Decl. at 3.) Mr. Blake's declaration states in part:

> While Ms. Jacobs told [him] she believed the children's accusations, she also said that both children were lairs. In fact, she said, the children stopped living with her because of the lies they told.

> In particular, Ms. Jacobs reported, the boy told authorities that a male friend of hers that was living with her temporarily had sexually abused him....
>
> According to Ms. Jacobs, the girl initially did not support her brother's accusation against the male friend. However, 24 hours later, after talking to her brother, the girl also told a similar story.

(Blake Decl. at ¶¶ 5-7.)

During the trial, the victims' aunt testified that Girl had told her about the rape, and she believed her. (1 Reporter's Transcript at 273-274.) The aunt further testified that she noticed changes in Girl's behavior consistent with sexual abuse. (1 RT at 276.) On cross-examination, the aunt admitted that the children could be "manipulative" and tell "little untruths, like any other kid."

On re-direct, the prosecutor addressed these "untruths" and asked whether the children could have fabricated the allegations of sexual abuse. (1 RT at 281.) The aunt responded:

> When I - when I spoke to [Girl] at the job [the Polinsky Center] about it, I believed her and it really - it hit my heart kind of hard because at that particular time there was no reasons for, you know, making up such allegations. There was no - there was no threat to the children because they were in a safe environment, they were at Polinsky. And for her to tell me - to disclose to me at the time, I did sincerely believe her.

(1 RT at 282.)

On re-cross examination, Petitioner's counsel questioned the aunt as follows:

> Q: Let me ask you this, Ms. Jacobs: Are you aware of an incident where one or both of these children reported sexual abuse by another person that you knew to be false?
> A: No, I don't know anything about it.
> Q: Some friends were staying with you at the time.
> A: Staying with me?
> Q: Or staying at their mother's house at the time.
> A: No.
> Q: You don't remember anything like that?
> A: No.

(1 RT at 282.)

Petitioner's counsel asked no further questions of the victims' aunt. (Id.)

1    Petitioner's failed to meet his burden of demonstrating that his counsel's representation fell
2 below an objective standard of reasonableness. Petitioner's counsel submitted a declaration to the
3 California Court of Appeal while the court considered Petitioner's request for a writ of habeas
4 corpus. (Lodgement 18.) In the declaration, defense counsel admits he received Mr. Blake's
5 investigative memo. (Lodgement 18 [Berman Declaration] at ¶ 2.) Counsel argues that
6 impeaching the aunt would have further hurt his client's case. (Berman Decl. at ¶ 4.) He found
7 the aunt to be a credible witness and impeaching her would "look bad in juror's eyes." (Id.)
8 Furthermore, impeachment would allow the aunt to reassert her belief that the children's
9 allegations were credible. (Id.)

10    Additionally, counsel retained an investigator and received the report of his findings.
11 (Berman Decl. at ¶ 2.) At trial, counsel had this information and declined to use it. (1 RT at 282.)
12 In *Strickland*, if counsel conducts a substantial investigation concerning all possible lines of
13 defense, "the strategic choices made as a result 'will seldom if ever' be found wanting." 466 U.S.
14 at 681 (quoting *Rose v. Lundy,* 455 U.S. 509 (1982).) Defense counsel used an investigator not
15 only to gather evidence of the victims' veracity, but to gather statements that he could use for
16 impeachment. So informed, counsel purposefully pursued one informed legal strategy over
17 another. "Because advocacy is an art and not a science,...strategic choices must be respected in
18 these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681.

19    Petitioner failed to meet his burden of demonstrating that his counsel's conduct so
20 prejudiced the defendant as to deprive him of a fair trial. Petitioner's defense was based on
21 painting the victims as liars. Counsel was able to use the aunt's testimony in his closing
22 arguments for this purpose. He pointed to the aunt's testimony that the children did lie and were
23 manipulative. (2 RT 391-392.) Had the defense impeached the aunt, she could have differentiated
24 the two instances and explained why the children were believable in this case.
25    Furthermore, the other evidence in the case was ample. The children's testimony was
26 consistent on all material matters. The inconsistencies in the victims' stories concerned collateral
27 matters, such as the type of bed they used. The aunt corroborated the victims' testimony about
28

some of the non-material matters, such as where they were living at the time of the abuse. (1 RT at 274.) Also, evidence of the Petitioner's prior convictions of rape and rape with a foreign object were presented at trial. Given the evidence, counsel's failure to impeach the victims' aunt would not have made a different outcome "reasonably probable."

Considering the strategic reasons for not impeaching the aunt and the lack of prejudice from counsel's decision, the state appellate court's ruling denying Petitioner's claim is not objectively unreasonable and is entitled to deference. Therefore, the Court recommends that habeas relief be DENIED with respect to claim one.

**D. Petitioner Is Not Entitled To Habeas Relief On The Basis Of Claim Two**

Petitioner claims that the trial court's admission of "other acts" evidence under California Evidence code § 1108 violated his right to due process and a fair trial. (Pet. at 19.) Specifically, Petitioner argues that: (1) California Evidence Code § 1108 unconstitutionally permits juries to convict defendants using criminal propensity evidence; (2) the admission of prior bad acts to prove criminal propensity necessarily violates the safeguard of California Evidence Code § 352; (3) the jury instruction exacerbates the constitutional infirmity of California Evidence Code § 1108 by explicitly allowing jurors to consider other acts as evidence of criminal propensity; (4) even if California Evidence Code § 1108 is constitutional, admission of the evidence in his case was improper because it was more prejudicial than probative; and (5) Petitioner was prejudiced by the error. (Pet. at 21-35.)

Respondents contends that: (1) California courts have accepted California Evidence Code § 1108 as constitutional; (2) the California Supreme Court has concluded that California Evidence Code § 352 is an adequate protection of a criminal defendant's due process rights; (3) the California Supreme Court has upheld the use of the jury instruction used in Petitioner's case; and (4) these rulings are not contrary to federal law. (Ans. at 20-23.)

At trial, the prosecution introduced evidence of two prior sexual assaults pursuant to California Evidence Code § 1108. (1 RT at 1-6; 1 Clerk's Transcript at 11-12.) The defense objected arguing the evidence was more prejudicial than probative. (1 RT at 4.) The trial judge

1 ruled that one prior rape conviction and one prior rape allegation were admissible. (1 RT 7-8.)
2 One of the assaults involved a women who had rented a room from Petitioner. (1 CT at 11.) On
3 February 25, 1989, Petitioner attacked her, placed a pillow over her face, and raped her. (Id.) The
4 second rape involved Petitioner's 18 year-old sister-in-law. While the his family slept, Petitioner
5 went to where his sister-in-law was sleeping. (1 CT 12.) He jumped on her back and threatened to
6 slice her throat if she moved. (Id.) He then pulled down her pants, lifted her shirt and raped her.
7 (Id.)

8    A state court's admission of evidence is not subject to federal habeas review unless the
9 evidentiary ruling violates federal law, either by infringing upon a specific federal constitutional or
10 statutory provision or by depriving the defendant of a fundamentally fair trial guaranteed by due
11 process. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). There are no published federal opinions which
12 have addressed the constitutionality of section 1108. However, the Ninth Circuit has held that
13 Federal Rule of Evidence 414, which is analogous to section 1108, does not violate the right to due
14 process. *United States v. LeMay*, 260 F.3d 1018, 1027 (2001). Rule 414 states that "[i]n a criminal
15 case in which the defendant is accused of an offense of child molestation, evidence of the
16 defendant's commission of another offense or offenses of child molestation is admissible, and may
17 be considered for its bearing on any matter to which it is relevant." *Id.* at 1024. The court held in
18 *LeMay* that Rule 414 is not unconstitutional because it is limited in its function by Rule 403. *Id.* at
19 1026-27. Rule 403 directs judges to exclude any evidence submitted under Rule 414 that is more
20 prejudicial than probative. *Id.* at 1027. The court reasoned that this balancing process eliminates
21 any due process concerns about Rule 414, stating: "[a]s long as the protections of Rule 403 remain
22 in place to ensure that potentially devastating evidence of little probative value will not reach the
23 jury, the right to a fair trial remains adequately safeguarded." *Id.* at 1026.

24    The reasoning of *LeMay* applies equally to this case because California Evidence Code §
25 1108 is similar to Rule 414.[2] Evidence admissible under section 1108 is limited by section 352.

---

27 [2] California Evidence Code § 1108 provides: "[In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or
28 offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Cal. Evid.Code § 1108(a). Section 352 parallels Rule 403 of the Federal Rules of Evidence because it permits a trial judge to exclude evidence when its probative value is substantially outweighed by its prejudicial effect.[3] Just as Rule 403 did in *LeMay*, Section 352 ensures evidence admitted under Section 1108 will not infringe on the right to a fair trial guaranteed under the Due Process Clause.

When admitting prior sex offense evidence, the trial court must weigh the evidence under § 352 to safeguard the defendant's rights. *People v. Falsetta*, 21 Cal. 4th 903, 916-918 (1999). To determine the probative or prejudicial value of the evidence, the trial court considers factors such as "its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission...." *Id.* at 917. The trial court's discretion under § 352 "will not be disturbed unless the court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." *People v. Yovanov,* 69 Cal. App. 4th 392, 406 (1999).

Petitioner argues that the current and prior acts are not sufficiently similar because the prior offenses involved women considerably older than the children. (Pet. at 31.) California Evidence Code § 1108 does not impose a strict similarity requirement. "At the hearing before the Judiciary Committee, there was discussion whether more exacting requirements of similarity

---

Federal Rules of Evidence Rule 414 provides: "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."

[3] California Evidence Code § 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Federal Rules of Evidence Rule 404 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

between the charged offense and the defendant's other offenses should be imposed. The decision was against making such a change, because doing so would tend to reintroduce the excessive requirements of specific similarity under prior law...and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative. Many sex offenders are not specialists, and commit a variety of offenses which differ in specific character." (Historical and Statutory Notes, West's Ann. Evid. Code (2003 supp.) foll. § 1108, p. 114.) (internal quotations omitted.)

In the instant case, all sexual offenses involved young females, sleeping in their beds at night. Petitioner used force and intimidation to subdue his victims. The marginal age disparity among the victims does not subtract from the commonalities between the cases. Each involved vulnerable young females, alone in their beds at night, who were sexually assaulted using force. Although the prior rapes may not have indicated Petitioner's disposition towards young children, they are probative of his disposition towards these types of sexual assaults.

Petitioner contends the prior sexual offenses are too remote to justify admission. (Pet. at 31.) The length of time between the offenses was not significant taking into account their similarities. Furthermore, Petitioner was incarcerated until May 1997, and committed the current offenses between May 1997 and January 1998. (1 CT at 6-7.) Petitioner was incapable of committing further crimes while in prison and once released returned to his assaultive behavior. Therefore, the current and prior offenses are constructively less remote.

Petitioner also argues the evidence of the prior offenses improperly shifted the jury's attention from the veracity of the children's testimony to his vilification. He claims this prejudice was exacerbated by the jury instructions (CALJIC 2.50.01). (Pet. at 28.) The jury was instructed that if they found "by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes." (1 CT at 121.) Given the other evidence presented at trial and the shocking nature of the instant charges, it is unlikely the jury convicted the Petitioner on the basis of the prior acts alone, or viewed them as more emotionally upsetting than the instant charges. Furthermore,

1  the trial court read the appropriate jury instructions limiting the use of prior offenses.[4]  (Id.)

2  Therefore, the state appellate court's decision rejecting Petitioner's due process claim is
3  not objectively unreasonable and is entitled to deference.  Thus, the Court recommends habeas
4  relief be DENIED with respect to claim two.

**E. Petitioner Is Not Entitled To Habeas Relief On The Basis Of Claim Three**

Petitioner claims the evidence was insufficient as a matter of law on all counts because the complainants' testimony was inherently improbable and unworthy of belief. (Pet. at 36.) Specifically, Petitioner argues the complainants' testimony was so contradictory, both internally and between them, that this Court is required to reverse all of appellant's convictions. (Pet. at 39.) Respondents answer that enough evidence was presented at trial to support guilty verdicts on all counts. (Ans. at 23) Furthermore, Respondents contend the inconsistencies in the children's testimony are not significant enough to render it inherently improbable. (Ans. at 24.)

In an insufficiency of evidence challenge to a state criminal conviction brought under § 2254, the petitioner is entitled to habeas relief if "it is found that upon the record evidence adduced at trial [that] no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). We construe the record evidence in the light most favorable to the prosecution and "respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." *United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir.1987). Although the reviewing court "normally must accept the jury's implicit determinations of credibility" concerning eyewitness testimony, the court is "permitted to disregard inherently improbable testimony." *United States v. Ramos-Rascon*, 8 F.3d 704, 709 n. 3 (9th Cir.1993) (citations omitted).

---

[4] The California Supreme Court has upheld the use of CALJIC 2.50.01. *See Falsetta*, 21 Cal. 4th at 922-924.  Moreover, the California Supreme court has also held that the current version of the instruction is superior to the one upheld in *Falsetta*. *People v. Reliford*, 29 Cal. 4th 1007, 1016 (2003).

Petitioner argues that the victims' testimony is inherently improbable because, at trial, Girl and Boy stated they slept on a rollaway bed and the floor respectively. (1 RT at 210-211.) However, the social workers testified the victims recalled being molested on bunk beds. (1 CT at 49; Supplemental CT at 19-20.) After speaking with the social workers, Girl spoke with her brother about the incident. (1 RT at 73.) He reminded her they had one rollaway bed at the Imperial Street apartment. (Id.) Girl explained to the jury she had been confused because when they stayed at their grandmother's house, she had a set of bunk beds. (Id.)

Social workers interviewed the children June 9, 2000, more than two years after the molestations. (1 CT at 2-48.) Throughout their childhood, the victims changed residences frequently, living with their mother, father, grandmother, aunts, uncles, or at the Polinsky Children's Center. (Id.) Considering the victims' young age at the time of the abuse, the intervening years before the interview, and the near-constant moving, it is understandable that the children would become confused about ancillary details. Under these circumstances, the inconsistencies in their testimony concerning their sleeping arrangements during the abuse does not render it inherently improbable.

Petitioner also asserts Girl's testimony differs on key issues. (Pet. at 37.) For instance, Girl told the social worker Petitioner had intercourse with her three time, twice in one apartment and once in another. (1 CT at 29-30, 32, 40.) At trial, Girl testified Petitioner had intercourse with her once and never touched her at the other apartment. (1 RT at 51,71.) Girl's interview indicates some confusion about the details of the molestations. (1 CT at 2-48.) Girl also did not have a clear grasp of sexual terminology.[5] (Id.) The interview, viewed in its entirety, shows that Girl

---

[5] "Girl told the social worker that [Petitioner] 'took [her] virginity' by raping her when she was living in the Imperial Avenue apartment. She stated this happened more than one time. She described an incident where [Petitioner] put his had over her mouth, lifted her nightgown, pulled down her underwear, and put his 'privacy' in her 'privates.' She stated that the second time this happened he just felt her 'butt.' When the social worker ask Girl how many times [Petitioner] put his 'privacy' in her 'privacy,' Girl answered '[a]bout three times.' She stated the second time happened when they moved to the 45th Street and Logan Avenue apartment, and then the third time her uncle followed [Petitioner] to see what he was doing in her bedroom. Later in the interview, she told the social worker [Petitioner] put his 'privacy' in her 'privacy' only one time in at the Logan Avenue apartment. There was also some confusion about whether the reference to 'times' meant more than one movement of [Petitioner's] penis on the same night, or more than one rape on distinct nights. When the social worker sought clarification by asking how many actual nights [Petitioner] put his 'privacy' in her

clearly states that Petitioner penetrated her on at least one occasion in the apartment of Imperial Avenue and touched her bottom on another occasion. (Id.) These statements were consistent at trial and the confusion concerning ancillary details of the abuse do not undermine the jury finding her testimony credible.

Additionally, Petitioner points to inconsistencies between Girl's and Boy's testimony. The children's testimony differs as to whether Petitioner touched Boy with his hand or penis. (1 RT at 67, 202-203.) Furthermore, Girl testified that she never told her mother about the abuse while [Petitioner] lived with them. (1 RT at 68-69.) Boy testified that they told their mother the day after the abuse occurred. (1 RT 225.)[6] Again, these inconsistencies are not significant enough to undermine the veracity of the children's testimony as a matter of law.

The jury viewed the videotapes of the interviews between the children and the social workers. (Supplemental CT at 2-71.) The jury had the opportunity to evaluate both the children's trial testimony and their statements during the interviews, and assess the children's veracity. The inconsistencies are not significant. Therefore, the decision of the state appellate court rejecting Petitioner's claim that the evidence was insufficient as a matter of law is not objectively unreasonable and is entitled to deference. Thus, the Court recommends habeas relief be DENIED with respect to claim three.

**F. Petitioner Is Not Entitled To Habeas Relief On The Basis Of Claim Four**

---

'privacy' at the Imperial Avenue apartment, Girl answered she did not know, but she thought it happened two times at the Imperial Avenue apartment. She reiterated that the second time it happened he just rubbed her 'butt.' Girl told the social worker [Petitioner] also 'raped' her little brother when they switched bed by rubbing on her brother's 'butt.'"
(Lodgement 10 at 11-12.)

[6] "Girl testified that while [Petitioner] was still living with them, her mother asked her 'out of the blue' if anyone had touched her. Girl responded 'no' because she was scared and did not know how to tell her mother. After [Petitioner] was no longer living with them, Girl told her mother, but her mother did no believe her. Girl eventually disclosed the molestations to her grandmother and her aunt."

"Boy testified that his sister told him she was scared and was going to tell their mother about the molestations. Boy brought the subject up first with their mother. The morning after [Petitioner] molested him and while his sister was present, Boy told his mother about [Petitioner'] molestations of him and his sister, but his mother did not believe him."
(Lodgement 10 at 12.)

Petitioner contends that his sentence of 310 years to life violates the Eighth and Fourteenth Amendment prohibition on cruel and unusual punishment. (Pet. at 45.) Petitioner further alleges his sentence violates Article I, Section 17, of the California Constitution.[7] (Pet. at 48-49.) Respondents argue Petitioner's sentence is not cruel and unusual because the Supreme Court has upheld California's "Three Strikes" law. (Ans. at 25-26.)

In support of his argument, Petitioner points to *Solem v Helm*, 463 U.S. 277, 292 (1983). *Solem* promulgated a "general principle of proportionality" under the Eight Amendment and a tripartite test to assess the proportionality of prison sentences. *Id.* at 288. However, Petitioner's reliance on *Solem* is misplaced. In a later case, the Supreme Court explicitly rejected the idea that the Eight Amendment contains a proportionality guarantee. *Harmelin v Michigan,* 501 U.S. 957, 965 (1991). In *Harmelin*, the Court stated "[i]t should be apparent from the above discussion that our 5-to-4 decision eight years ago in *Solem* was scarcely the expression of clear and well accepted constitutional law. We conclude from this examination that *Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Id.*

In addition, the Supreme Court has recently upheld California's "Three Strikes" law. *See Ewing v. California*, 538 U.S. 11 (2003); *see also Lockyer v. Andrade*, 538 U.S. 63 (2003). California courts have rejected the claim that life in prison with no possibility of parole for sex offenders "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." *In re Lynch*, 8 Cal.3d 410, 424 (1972).

In deciding whether a sentence is cruel and unusual, courts consider the nature of the offense and the offender and the degree of danger to society. *Id.* at 425. In the instant case, Petitioner was convicted of rape in 1989 and was paroled from prison in May 1997. (1 CT at 6-7.) He raped and molested the current victims between May 1997 and January 1998. (1 CT 2-5.) In January 1998, he assaulted and robbed a women in a parking lot and was returned to prison. (1 CT

---

[7] "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." 28 U.S.C.A. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Habeas relief is not available for an alleged error in the interpretation or application of state law. *Estelle*, 502 U.S. at 67-68. Therefore, we need not address the Petitioner claim alleging a violation of the California Constitution.

at 6-7.) The California Court of Appeal found that Petitioner has shown a "repeated inability to refrain from serious criminal conduct when not incarcerated." (Lodgement 10 at 14.) The court further stated:

> By virtue of his convictions, [Petitioner] has been found to be a repeat offender who assaults vulnerable females. Under these circumstances, imposing a sentence that effectively keeps him in prison for the rest of his life is not cruel and unusual punishment.

(Lodgement 10 at 15.)

Therefore, the decision of the state appellate court rejecting Petitioner's claim that his sentence constitutes cruel and unusual punishment is not objectively unreasonable and is entitled to deference. Thus, the Court recommends that habeas relief be DENIED with respect to claim four.

## V. DISCUSSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the Court issue an Order: DENYING Petitioner's Petition for Writ of Habeas Corpus with prejudice.

IT IS ORDERED that no later than **August 27, 2007** any party to this action may file a written objection with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **September 21, 2007**. The parties are advised that failure to file objections within the specified time may result in a waiver of the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.1998); *see also Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir.1991).

IT IS SO ORDERED.

DATED: July 26, 2007

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge

| | |
|---|---|
| 1 | United States District Court |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |